# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES EDWARD FREEMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Civil Action Number |
| ) | **2:15-cv-00136-AKK** |
| **MARSHALL DURBIN FOOD** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

James Freeman's second amended complaint, doc. 22,[1] alleges claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, against Marshall Durbin Food Corporation ("Marshall Durbin"). The court has for consideration Marshall Durbin's motion for summary judgment, which is fully briefed, docs. 29; 30; 31,[2] and ripe for review. For the reasons stated below, the court concludes that the motion is due to be granted.

---

[1] This pleading appears on the docket sheet as "Amendedment of Complaint," but the court will refer to this document as the "second amended complaint" for purposes of clarity.

[2] Freeman filed a motion for leave to file a sur-reply. *See* doc. 32. The sur-reply rehashes the same arguments he made in his primary brief, and does not advance any new arguments. Still, because the court considered it — in large part to ensure that it considered *all* of Freeman's contentions —, the court will grant the motion for leave.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323.  The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual dispute will be resolved in the non-moving party's favor when sufficient competent

evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 238 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Summary

Marshall Durbin hired Freeman, who is African-American, male, and over forty years of age, on February 12, 2012, at its Jasper, Alabama poultry plant. Docs. 1-1 at 3–4; 26-2 at 13; 30 at 3. Freeman worked on the ninth (and final) spot of a deboning and marination line, which was physically located in the plant's cooler. Doc. 26-1 at 14–15. Freeman worked approximately ninety percent of the time inside the cooler, *id.* at 29, which was technically part of the shipping department, *id.* at 14. Within two months of his hire date, Freeman sought "cooler

pay," which is a premium of $0.25 per hour that "[e]very single person" in the shipping department received. *Id.* at 26, 29. The nighttime superintendent that received Freeman's request, identified only as "Big Hosea," "told [Freeman] that he couldn't do it," explaining that there "was a difference between them working in the . . . shipping department and [Freeman] working in [the] marination [department]." *Id.* at 26.

Shortly after Freeman's request, after paying Freeman an undisclosed sum for his hours in the cooler, Big Hosea shortened the deboning and marination line to eight spots, obviating the need for any marination department employee to work inside the cooler. *Id.* at 25, 27–28. As a practical consequence, however, the change forced Freeman to perform the job duties of the eighth and his former ninth spot without additional pay. Doc. 26-1 at 25, 31. As Freeman put it: "I work at that substandard pay or they're going to put me in here in retaliation. They're going to take this eighth guy out and put me in there to do his job and do mine too." *Id.*

Approximately a month after the change, Freeman requested a transfer or promotion to the supply room, by submitting a written application to the Human Resources Clerk, Bibiana Benson. *Id.* at 22. Benson testified that she does not remember Freeman submitting an application but, if he did, she would have submitted it to Alisa Hall, HR Manager, who, in turn, would have sent the

application to the pertinent supervisor after ensuring that Freeman met the minimum criteria.  Doc. 26-2 at 27–28. In any event, Marshall Durbin never interviewed Freeman, and instead filled the vacancy with a "white woman off the street."  Doc. 26-1 at 48, 57.  Upset by this, Freeman requested a meeting with the plant manager Mark Dean and Alisa Hall, during which Freeman complained about the decision to select an outside candidate over a *current* employee like him. *Id.* at 22, 42.  In response, Dean informed Freeman that the supervisor who made the decision told Dean that "nobody in the plant applied for the job."  *Id.* at 22. Freeman believes that the supervisor never received his application because Benson or Hall "trashed" his application out of "hate."  *Id.* at 20, 22–23.

In August of 2012, Freeman requested arbitration forms from Benson and Hall, but refused to disclose which claims he sought to arbitrate.  *Id.* at 17, 43–44. Freeman never received the forms.  *Id.* at 17.  A few weeks later, on August 28, 2012, Marshall Durbin terminated Freeman pursuant to its absenteeism policy for accruing more than the maximum of 10 absence "points."  Doc. 26-1 at 15; doc. 26-3 at 2.  Freeman challenges the points tally or, alternatively, asserts that Benson's actions caused him to accrue over 10 points.  Doc. 26-1 at 39, 54–55. For example, Freeman maintains that, on at least a few occasions, the "time clock wouldn't clock [him] in," *id.* at 39, that he received pay for some of the days on which the absentee calendar listed him as "absent," *id.* at 48, and that Benson did

not allow him to work on some occasions to ensure that he accumulated absence points, *id.* at 17, 52; *see also* doc. 30 at 7, 9. Freeman contends that Marshall Durbin discharged him "because [he] was discriminated about getting [the supply room] job. And when [he] decided to take the issue further [*i.e.*, by asking for an arbitration form], then [he] was terminated." Doc. 26-1 at 43.

## B. Procedural History

After obtaining his right-to-sue letter, Freeman timely initiated this action, by filing an application under § 706(f) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), for appointment of an attorney and authority to proceed *in forma pauperis*. *See generally* doc. 1. The court denied Freeman's request for an attorney, conditionally granted the application to proceed *in forma pauperis*, and directed Freeman to file an amended complaint. *See* doc. 4 at 1, 4. Freeman timely filed an amended complaint, in which he alleged six claims: fraud (Count I); age discrimination (Count II); retaliation (Count III); racial discrimination (Count IV); hostile work environment (Count V); and wrongful termination (Count VI). *See* doc. 6.

Marshall Durbin subsequently moved for dismissal, or alternatively, for summary judgment, on the grounds that: (1) Freeman failed to plead his fraud claim with particularity; and (2) Freeman's Title VII claims were time-barred, due to Freeman's failure to (a) file a complaint within 90 days of receiving an EEOC

right-to-sue letter, and (b) file an EEOC charge within 180 days of the alleged discriminatory conduct.  Doc. 9.  The court agreed that Freeman failed to state a claim for fraud.  Doc. 12 at 2.  As to Marshall Durbin's second contention, because the judge previously assigned to this case had "treated [Freeman's] application as a complaint in its order denying the appointment of counsel and allowing [Freeman] to proceed *in forma pauperis*," the court concluded that Freeman had "timely filed his complaint."  *Id.* at 3.  Nonetheless, the court agreed that many of Freeman's claims fell outside the 180 day window allowed by Title VII[3]:

> [Freeman] contends that Marshall Durbin engaged in (1) age discrimination when it did not pay him at the same rate as younger employees in April 2012, (2) racial discrimination when it declined to hire him for a supply room position and later hired a white female to fill the position in May or June 2012, and (3) disability discrimination by creating a hostile work environment when it refused to make a reasonable accommodation for his disability in June 2012.  Doc. 1-1 at 9. . . . All of these contentions occurred prior to August 24, 2012 — the 180 day cutoff under Title VII — and, as such are untimely.

*Id.* at 3–4.  Still, "because some of these incidents [formed] the basis for [Freeman's] alleged protected activity," the court found that Freeman could "rely on these acts to establish that he engaged in protected activity to support his retaliation claim."  *Id.* at 4.  In summary, the court granted the motion as to Counts I, II, IV, and V, and denied the motion as to Counts III (retaliation) and VI

---

[3] Freeman filed his EEOC charge on February 19, 2013.  *See* doc. 1-1 at 3.  The 180th day preceding that filing was August 24, 2012.  Thus, any claims that occurred prior to that date are time-barred under 42 U.S.C. § 2000e-5-(e).

7

(wrongful termination). *Id.* Freeman filed a motion for reconsideration, doc. 17, which the court denied, doc. 18.

Freeman later filed a motion for leave to amend his pleadings, doc. 20, which the court granted, doc. 21. The second amended complaint sets forth the following claims: disparate treatment under the ADEA (Count I); retaliation (Count II); race discrimination under Title VII (Count III); wrongful termination under Title VII (Count IV); intentional deprivation of participation in an employment dispute resolution program under Title VII (Count V); and hostile work environment (Count VI). Doc. 22. The court addresses Marshall Durbin's motion for summary judgment as to these claims, doc. 26, below.

### III. ANALYSIS

Marshall Durbin correctly notes that the second amended complaint merely reiterates many of the claims this court previously dismissed. Doc. 29 at 4; *see also* doc. 12. Accordingly, the court will first address the timeliness of Freeman's present claims. The court will then address the merits of any remaining claim(s).

   **A.  Freeman's Untimely Claims**

Freeman concedes that the claims he asserts in the second amended complaint simply "reaffirm[]" claims this court previously dismissed (*see* doc. 12), with the exception of the fraud claim, which Freeman now recasts as a deprivation

of his right to arbitrate in violation of Title VII.  *See* doc. 26-1 at 14.[4]  Indeed, Amended Count 1 restates previous Count 2, Amended Count 2 restates previous Count 3, and Amended Count 3 restates previous Count 4.  *See* doc. 22 at 3–5.  Amended Count 5 is a recast of previous Count 1, and states a new claim relating to his alleged deprivation of participation in Marshall Durbin's arbitration program.  *See id.* at 9–10.  Finally, Amended Count 6, previous Count 5, restates and elaborates on his claim of a "hostile work environment."  *See id.* at 10.

As the court stated in its previous order of dismissal, these claims are untimely due to Freeman's failure to file an EEOC charge within 180 days of the events underlying those claims.  *See* doc. 12 at 4.  Moreover, even though Freeman has changed the legal vehicle through which he seeks recovery for the failure to allow him to arbitrate from common law fraud (old Count I) to Title VII (new Count V), the underlying events, which remain unchanged, still occurred prior to the 180-day cutoff of August 24, 2012.  To get around the timeliness issue, Freeman argues that this "new" claim is not time-barred because Marshall Durbin's arbitration policy "compelled [him] to remain bound by [that] agreement *even after termination of employment*."  Doc. 30 at 11 (emphasis added); *see also*

---

[4] When asked in deposition, "[w]hat claims do you think you bring in the [second] amended complaint," Freeman responded:  "I reaffirmed my original claim and altered the claim in regards to the company's employment dispute program.  I also brought — although I had presented it earlier, I don't think I have filed it within the court about the hostile work environment."  Doc. 26-1 at 14.

doc. 17 at 13, 16. This argument is unavailing, in part, because the record contains no evidence of actions or omissions by Marshall Durbin employees after Freeman's request for arbitration forms in July of 2012 (such as giving Freeman the "run around" or directly refusing to give Freeman an arbitration form) that could support this claim. Moreover, the court cannot accept Freeman's argument that he can file an EEOC charge related to arbitration any time "after termination of employment," as this period is too indefinite. Accordingly, Counts I, II, III, V, and VI are due to be dismissed as untimely.

### B. Freeman's Remaining Claim (Count IV)

The court turns next to the merits of Freeman's sole remaining claim. In Count IV, Freeman states a Title VII claim regarding his termination. Because it is unclear whether Freeman is asserting racially discriminatory discharge or retaliatory discharge,[5] the court will analyze the merits of both claims.

---

[5] Count IV states, in full:

The plaintiff contends that his discharge resulted from a racially discriminatory employment practice in violation of section 703(A)(1), Title Civil Rights Act of 1964.

The defendants' [sic] contends, however that the plaintiff's employment was terminated because of his excessive absences. See, plaintiff's exhibit 'E' (hand written attendance notification of the plaintiff provided by Ms. Bibiana Benson, Nightshift HR Supervisor).

To begin with, an accurate account of the plaintiff's attendance record should have shown no more than four absences as of August 18th 2012. For example, the plaintiff's pay was corrected for the absences listed on April 15th,

1. Racially discriminatory discharge

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Where, as here, Freeman is attempting to prove

---

and April 23rd, 2012; and the tardiness listed on May 27th, 2012. See plaintiff's exhibit 'G', pages 1–3.

In addition, the defendants' attendance record credits the plaintiff with two (2) absences for June 19th, and June 20th, 2012, while under the same doctor's slip.

Thus, after it was revealed that the plaintiff would be seeking more answers in regards to his having been deliberately by-passed for the promotional/job transfer opening of supply room clerk, through their arbitration system concerning employment resolutions, see plaintiff's exhibit 'A'; the plaintiff clearly became subjected to the arbitrary and capricious actions of the defendants' [*sic*].

For when the plaintiff reported to work on August 21, 2012, with a doctor's slip, he was forbidden to work because his doctor's slip didn't specify that he could work without restrictions. See, plaintiff's exhibit 'J' at 3, (Attached). The plaintiff was sent home, by Ms. Biviana Benson. The same Ms. Benson, who allegedly lost the plaintiff's application for promotion/transfer job opening for the supply room clerk. See defendants' exhibit 1, page 1, lines 6–7.

When the plaintiff returned to work on August 22, 2012, with a doctors' slip specifying that he could return to work "without any restrictions" he was again sent home by Ms. Benson, because his doctor's slip did not cover August 21, 2012. And until he was able to produce such a fraudulent excuse specifying that he was under a doctor's care when he clearly was not, the plaintiff would be forbidden to work for the defendants' [*sic*]. See, plaintiff's exhibit 'L', pages 1–2. The defendants' insistence of this fraudulent doctor's excuse was merely a ruse to cover-up their deliberate by-pass of the plaintiff's request for the promotional/job transfer opening in the supply room. See, Wright v. West, 505 U.S. 277, 296, Supreme Court (1992).

Doc. 22 at 5–8.

11

intentional discrimination through circumstantial evidence,[6] the court utilizes the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof. Under this method, Freeman bears the burden of establishing a *prima facie* case of racial discrimination. *See Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If Freeman satisfies his initial burden, "then [Marshall Durbin] must show a legitimate, non-discriminatory reason for its employment action." *Id.* (citation omitted). "If it does so, then [Freeman] must prove that the reason provided by [Marshall Durbin] is a pretext for unlawful discrimination." *Id.* (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that [Marshall Durbin] intentionally discriminated against [Freeman] remains at all times with [Freeman]." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

> a. Freeman cannot establish a *prima facie case of race discrimination.*

---

[6] The record contains no direct evidence of racial discrimination. When asked what Benson's alleged manipulation of Freeman's absentee points "[had] to do with [Freeman's] race," Freeman replied: "Well, you tell me what it has to do with it." Defense counsel said, "I'm asking you." Freeman replied: "I mean, why else would you do that?" Doc. 26-1 at 61. Later, when asked to identify the "racially discriminatory employment practice" Marshall Durbin engaged in with regard to his discharge, Freeman replied: "Yeah. Yeah. That I was terminated because I — I sought a promotion. And as a result of seeking that promotion, I was discriminated against further for — for seeking a second [*i.e.*, meeting with Mark Dean and Alisa Hall] and third [requesting arbitration forms] resolution in regard to that. That's my point." *Id.* at 60.

To establish a *prima facie* case of race discrimination, Freeman must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) Marshall Durbin treated similarly situated employees outside of Freeman's protected class more favorably. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Although Freeman can establish the first three elements, he cannot satisfy the fourth, as he has failed to identify any person outside of his protected class that Marshall Durbin failed to discharge who received more than 10 absence points.

> b. *Freeman's claim also fails because he cannot rebut Marshall Durbin's legitimate, nondiscriminatory reason.*

Alternatively, because "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case, [and because] the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case," *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), the court will assume that Freeman can make a *prima facie* case. Therefore, the next step in the *McDonnell Douglas* framework is for Marshall Durbin to articulate a legitimate, nondiscriminatory reason for Freeman's discharge. *See Burke-Fowler*, 447 F.3d at 1323. Marshall Durbin has met its burden through its contention that it discharged Freeman because of excessive absences. *See Wills v. Postmaster Gen.*, 300 F. App'x 748, 752 (11th Cir. 2008)

(excessive absences are a legitimate, nondiscriminatory reason for an adverse employment action).

Consequently, the burden shifts to Freeman to prove that Marshall Durbin's reason is pretext for unlawful race discrimination. *See Burke-Fowler*, 447 F.3d at 1323. Unfortunately, Freeman has failed to meet his burden. Even accepting as true Freeman's assertion that he only accumulated 10 absentee points because Benson manufactured, or caused, some of the points in order to procure Freeman's termination, Freeman's claim fails for several reasons. First, as Freeman acknowledges, John Carden — not Benson — made the decision to discharge Freeman, *see* doc. 26-1 at 39, and Freeman has no reason to believe that Carden doubted the accuracy of the attendance records Benson presented to him, *see id.* at 58. Second, even if Carden acted based on inaccurate attendance information that Benson created out of purported racial animus because, as Freeman puts it, "I mean, why else would [she] do that?," doc. 26-1 at 61, Carden discharged Freeman pursuant to a good faith belief that Freeman had violated Marshall Durbin's absenteeism policy. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("The law is clear that, even if a Title VII claimant did not in fact commit

the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation."); *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race.'").  Third, Freeman has not presented any evidence that Carden "knew" or "suspected" that Benson had "manipulated" his absence points.  Finally, Freeman must show more than just falsified attendance records because "[a] reason cannot be pretext for discrimination unless it is shown both that the reason was false, *and* that discrimination was the real reason," *Blue v. Dunn Constr. Co., Inc.*, 453 F. App'x 881, 884 (11th Cir. 2011) (emphasis in original).  Unfortunately for Freeman, facts, rather than speculation or unfounded allegations that Carden must have acted because of Freeman's race, are needed to defeat a motion for summary judgment.  *See Cordoba v. Dillard's*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)) (ellipsis and emphasis in *Cordoba*, internal quotation marks omitted).  Other than Freeman's

own belief that race had to be the reason for his discharge, *see supra* note 6, the record simply contains no evidence of race discrimination.

In light of the foregoing, Marshall Durbin is entitled to summary judgment as to any claim of racially discriminatory discharge.

2. Retaliatory discharge

To establish a *prima facie* case of retaliation, Freeman must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)) (internal citations omitted). While Freeman unquestionably suffered an adverse employment action (termination), his claim fails because he did not engage in statutorily protected expression. The record is clear that Freeman complained about the decision not to select him for the supply room position, doc. 26-1 at 22, and that he requested arbitration papers, *id.* at 43, presumably to challenge the decision. However, on both occasions, Freeman never mentioned discrimination. In fact, when he requested arbitration forms, Freeman never even *suggested* to Alisa Hall, Bibiana Benson, or any other person at Marshall Durbin that he believed discriminatory animus factored in the selection process. *See id.* at 17 (Q: "Did you tell Ms. Benson why you wanted an arbitration form? A: "No, I didn't

tell her what I wanted it for."); 43 (Q: "Did you tell Alisa Hall what claims you wanted to arbitrate?" A: "No. That wasn't her business."); *id.* (Q: "Did you tell Lynn Nolan what claims you wanted to arbitrate?" A: "That wasn't her business."); 44 (Q: "Did you tell John Carden that you wanted to arbitrate?" A: "Nobody. I told nobody the claims I was going to arbitrate."). Likewise, there is no evidence that Freeman suggested to Dean or Hall during the June 21, 2012 meeting that he believed race factored into the decision to select someone from outside the company for the supply room position. *See also* doc. 26-3 at 59–60 ("Admit . . . that you did not complain that race was a motivating factor in the decision to hire someone outside of the company" for the supply room position."); 89–90 ("[N]o, I did not mention[] race.").

 Freeman obviously had the right not to disclose why he wanted the arbitration forms or why he questioned the selection of an outside candidate instead of a current employee. However, in order to engage in statutorily protected activity, he must "oppos[e] any practice made an unlawful employment practice by" Title VII. *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). Simply stating that a decision was unfair does not qualify, because "Title VII addresses *discrimination* . . . Title VII is not a shield against harsh treatment at the workplace . . . and an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for

17

no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY*, 738 F.2d 1181, 1187 (11th Cir. 1984) (quotations and citations omitted, emphasis in original).

Finally, even if the court found that Freeman's request for arbitration papers or his questioning of the hiring decision is protected activity, his retaliation claim still fails because he has no evidence that the decision maker knew that he had engaged in such conduct. Specifically, John Carden, the supervisor who discharged Freeman, doc. 26-1 at 39, was not present for Freeman's June 21, 2012 meeting with Mark Dean and Alisa Hall, *id.* at 42, and Freeman never told Carden he wished to arbitrate, *id.* at 44. Carden's only involvement in Freeman's termination was "simply his reliance on [the attendance points] information provided to him by Bibiana Benson." *Id.* at 58. *See McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)) (a retaliation claim "requires a plaintiff to demonstrate that 'the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated'") (alterations in original, some internal quotations omitted). In short, there is no evidence that Carden discharged Freeman in retaliation for any statutorily protected expression.

Accordingly, Marshall Durbin is entitled to summary judgment as to any claim of retaliatory discharge.

## IV. CONCLUSION

Because Counts I, II, III, V, and VI are time-barred, and because Count IV fails on the merits, Marshall Durbin's motion for summary judgment is due to be granted, and Freeman's claims dismissed with prejudice. The court will enter a separate order consistent with this opinion.

**DONE** the 20th day of October, 2016.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　**ABDUL K. KALLON**
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE